## THE BANAN.

### THE LANDSKRONA.

#### (District Court, E. D. Pennsylvania. July 18, 1902.)

#### Nos. 1 and 2 of 1900.

1. COLLISION—SHIP AT ANCHOR—PRESUMPTION.
   Where a collision occurs between a bark lying at anchor and a steamship, it will be presumed that the collision resulted from the fault of the steamship, and such presumption of innocence in favor of the bark can only be overcome by a clear proof of a contributory fault.

2. SAME—EVIDENCE.
   Where a steamship came into collision with a loaded bark lying at anchor in the Delaware river, and the steamship was guilty of negligence in not maintaining a lookout forward, and the steamer claimed release by reason of the fact that the bark's anchor light was not burning, while the bark contended that the anchor light was mistaken by the steamer's pilot for one of the range lights, and that a wrong course was thereby adopted, such evidence sufficiently proved that the bark was anchored dangerously near the channel, and therefore that both vessels negligently contributed to the collision.

Horace L. Cheyney, Francis C. Adler, and John F. Lewis, for the bark.

Henry R. Edmunds, for the steamship.

J. B. McPHERSON, District Judge. These are cross libels growing out of a collision on the Delaware river about 4 o'clock in the morning of December 31, 1899. The Landskrona is a British bark of 1,330 tons register, and at the time of the collision was loaded with a cargo of coal, and was drawing more than 20 feet. She was lying at anchor on the anchorage ground near Gloucester, not far below the port of Philadelphia. She had been towed to the ground about noon on December 30th and was to sail in a short time from that point for Cape Town, South Africa. Her crew had not yet been engaged, however, and no one was on board except an elderly man, who had been in charge of her for a fortnight as watchman or shipkeeper. The night was dark and very cold, but there was no fog or mist, and lights could be easily seen. The tide was ebb, and the wind was blowing briskly from the west or northwest, causing the bark to

¶ 1. See Collision, vol. 10, Cent. Dig. § 103.

lie with her bow up stream, and inclining at an angle of a point or two toward the western bank of the river. While lying in this position, the Banan, a Norwegian steamship of 979 tons register, which was proceeding down the river on her way to New York, struck the Landskrona on the starboard bow, carrying away her jibboom and bowsprit, and doing other injury. The Banan also suffered a good deal of damage, and each vessel is now charging the other with various faults, which are declared to be the true cause of the collision.

After a study of the usually conflicting testimony, I have come to the conclusion that both vessels were at fault. I am satisfied that the Banan had no lookout forward for at least 10 or 15 minutes before the collision took place; and, when it is considered that a few yards' further alteration of the vessel's course would have probably carried her clear, I think it follows with reasonable certainty that the absence of the lookout contributed to the injury; at all events, I think it is impossible to say that the absence of the lookout did not thus contribute, and it is the burden of showing his absence to have been harmless that must be borne by a steamship that does not station a lookout at the proper point forward. The Banan being at fault, therefore, in this respect, and the Landskrona, moreover, having been at anchor, the presumption of innocence is in favor of the bark, and can only be overcome by clear proof of a contributory fault. To use the language of Mr. Justice Brown in The Oregon, 158 U. S. 186, 197, 15 Sup. Ct. 804, 809, 39 L. Ed. 943:

"As we had occasion to remark in The City of New York, 147 U. S. 72, 85, 13 Sup. Ct. 211, 37 L. Ed. 84, where one vessel, clearly shown to be at fault adequate in itself to account for the collision, seeks to impugn the management of the other vessel, there is a presumption in favor of the latter, which can only be rebutted by clear proof of a contributing fault. The principle is peculiarly applicable in the case of a vessel at anchor, since there is not only a presumption in her favor by the fact of her being at anchor, but a presumption of fault on the part of the other vessel, which shifts the burden of proof upon the latter."

In spite of the presumption, however, the decided weight of the evidence has convinced me that the Landskrona was anchored either on the ranges, or so near as to be a dangerous obstruction to vessels following the channel at night. To suppose that the Banan was over to the eastward on the anchorage ground, where she had no right to be, is to reject all her testimony, some of which is apparently without bias, and also to do violence to probability. Certainly, the course which she would probably follow with solicitude on a dark night would be the channel as pointed out by the range lights, and this would carry her clear of the anchorage ground. Moreover, the explanation which she offers of the collision, namely, that the Landskrona's anchor light was not burning, having perhaps been temporarily extinguished by the wind,—an accident that was feared by the shipkeeper,—is more satisfactory than the explanation offered by the Landskrona, namely, that the anchor light was mistaken by the pilot and wheelsman of the Banan for one of the range lights, and a wrong course was thus adopted. This explanation seems to me to be fatal, for, if the anchor light was so nearly in line with the range lights as to mislead the pilot and the wheelsman of the Banan, I think this

could scarcely have happened unless the bark herself was lying too near the ranges for safety. Otherwise, the steamship would have seen three lights instead of what seemed to be only two.

I may add that I have paid no attention to the ex parte statements of the seaman Mylund.

In my opinion, the damages should be divided, and a decree to that effect may be entered.